James Weyand, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

Submitted on briefs October 30, 1985, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Kenneth W. Johnson*, for petitioner.

*Arthur R. Thomas*, Assistant Chief Counsel, and *Robert A. Greevy*, Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, January 3, 1986:

James Weyand petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board) which denied him administrative relief from a Board revocation order. That order reaffirmed a prior revocation order and set a new maximum term expiration date and tentative reparole date on his two to four year Somerset County sentence.

The following facts are pertinent. Weyand was originally sentenced in Somerset County Common Pleas Court on September 11, 1981 by Judge NORMAN A. SHAULIS to concurrent terms totaling two to four years in the Somerset County Jail following his convictions for Theft[1] and Criminal Trespass.[2] That sentence carried a minimum term expiration date of Au-

---

[1] 18 Pa. C. S. §3901.

[2] 18 Pa. C. S. §3503.

gust 2, 1983[3] and an original maximum term expiration date of August 2, 1985. On December 4, 1981, he again appeared before Judge SHAULIS in Somerset County Common Pleas Court where he was sentenced to concurrent one to two year terms for his conviction for Burglary[4] and Criminal Trespass. This sentence was to run consecutively to the two to four year sentence imposed on September 11, 1981.

The Board granted Weyand parole on the two to four year sentence effective August 8, 1983. He was not released from confinement at that time but commenced serving the minimum term of his one to two year detainer sentence[5] and was placed in the work release program at the Somerset County Jail. In early September, authorities at the Somerset County Jail noticed that Weyand appeared to be in a high condition when he returned to the jail from work release. Although he denied any use of narcotics when questioned by the Sheriff, on September 9, 1981, he was required to submit a urine sample for urinalysis. The laboratory report on the urine sample submitted by Weyand was returned on September 21, 1981 and indicated that the sample had tested positive for THC,

---

[3] While Weyand was sentenced on September 11, 1981, Somerset County court records show that he was entitled to forty-six days confinement credit on that sentence.

[4] 18 Pa. C. S. §3502.

[5] We have previously defined a "detainer sentence" to be a sentence, separate and distinct from that sentence the parolee is presently serving, which is noted on the parolee's institutional records to ensure that, after the parolee has completed his present term, he will be available to the authority which imposed the separate sentence for service of that separate sentence rather than being released from confinement. *Counts v. Pennsylvania Board of Probation and Parole*, 87 Pa. Commonwealth Ct. 277, 279 n.3, 487 A.2d 450, 452 n.3 (1985). Here, Weyand's "detainer sentence" was the consecutive one to two year sentence imposed on December 4, 1981 in Somerset County Common Pleas Court for his Burglary and Criminal Trespass convictions.

the active ingredient of marihuana. Judge SHAULIS revoked Weyand's work release privileges based upon that positive urinalysis. Weyand's parole agent was notified of his positive urinalysis on October 5, 1983 and Weyand was subsequently charged by the Board with being in violation of general parole condition 5A[6] and special parole condition 6[7] of his parole. A parole Violation Hearing was held on January 4, 1984 before a Board hearing examiner at the Somerset County Jail. As a result of that hearing, on January 30, 1984, the Board revoked Weyand's parole on the two to four year sentence and ordered that he be recommitted as a technical parole violator to serve nine months on backtime, when available. No appeal was ever taken from that revocation order.

Weyand became eligible to apply for parole on the one to two year sentence when he completed the minimum term of that sentence on June 28, 1984.[8] He failed to submit a parole application and, as a result, he was not interviewed by the Board for parole on that sentence until November 30, 1984. The Board granted

---

[6] General Parole Condition 5A mandates that parolees "abstain from the unlawful possession or sale of narcotics and dangerous drugs, and abstain from the use of controlled substances within the meaning of The Controlled Substance, Drug, Device, and Cosmetic Act (35 P.S. §§780-101-780-144) without a valid prescription." 37 Pa. Code §63.4(5)(i).

[7] In addition to the general condition of parole found at 37 Pa. Code §63.4, the Board imposed a special condition of parole upon Weyand as authorized by Section 23 of the Parole Act, 61 P.S. §331.23. The special condition of parole imposed upon Weyand required him to "abide by the rules and regulations of the institution [Somerset County Jail]."

[8] While Weyand was constructively paroled on August 8, 1983 to commence serving the minimum term of his one to two year detainer sentence, Somerset County Common Pleas Court records show that he was entitled to forty days confinement credit on that sentence which resulted in the minimum term of that sentence expiring on June 28, 1984 rather than August 8, 1984.

him parole on the one to two year sentence effective February 4, 1985 at which time he commenced serving the nine months backtime imposed by the Board's revocation order of January 30, 1984. In its order granting Weyand parole on the one to two year sentence, the Board also reaffirmed its revocation order of January 30, 1984 and calculated Weyand's reparole eligibility date on the two to four year sentence to be October 17, 1985 and the new maximum term expiration date of that sentence to be November 14, 1986. Weyand petitioned for administrative relief under 37 Pa. Code §71.5(h) challenging both his reparole eligibility date and the Board's computation of his new maximum term expiration date. The Board denied administrative relief on February 12, 1985 and this appeal followed.

In this appeal, Weyand contends that (1) the Board had a duty to interview him sua sponte for parole when he completed the minimum term of his one to two year sentence; (2) that the Board erred as a matter of law when it declared him delinquent on his two to four year sentence after it revoked his parole on that sentence on January 30, 1984; and (3) that his parole Violation Hearing was untimely. We shall address those issues in the order presented, mindful, of course, that our scope of review of a Board parole revocation order is limited to determining whether necessary findings are supported by substantial evidence, whether the Board committed an error of law, or whether any of the parolee's constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Cox v. Board of Probation and Parole,* 507 Pa. 614, 493 A.2d 680 (1985).

Weyand bases his contention that the Board had the duty to consider him for parole automatically upon the expiration of his minimum term upon language contained in Section 22 of the Act of August 6, 1941

(Parole Act), P.L. 861, *as amended,* 61 P.S. §331.22, and regulations promulgated by the Board pursuant to Section 22. Since the Board failed to perform its statutory duty with regard to his parole eligibility, he argues that the Board violated his rights and that, therefore, he is entitled to have the effective date of his parole on the one to two year sentence moved from February 4, 1985 to June 28, 1984, the minimum term expiration date, and to have the Board recompute his reparole eligibility and maximum term expiration date of his two to four year sentence accordingly. We respectfully disagree.

Section 22 of the Parole Act reads, in pertinent part, as follows:

> *§331.22. Paroles on board's own motion; applications and hearings; notice to district attorney and court*
>
> The board shall have the power, subject to the provisions and limitations set forth in section twenty-one [61 P.S. §331.21], to grant paroles of its own motion *whenever in its judgment the interests of justice require the granting of the same.* In addition thereto, the board shall have the power, *and it shall be its duty,* to consider applications for parole by a prisoner or by his attorney, relatives or friends or by any person properly interested in the matter. Hearings on *applications* shall be held by the board whenever in its judgment hearings are necessary. Reasonable rules and regulations shall be adopted by the board for the presentation of *applications* for parole. . . . *Applications* shall be disposed of by the board within six months of the filing thereof. Except in cases where the Pardon Board has reduced a minimum term by commutation, the board shall initially act on the *application,* if possible, before the expiration

.of the minimum term so fixed, and in no case more than thirty days thereafter.

In granting and revoking paroles, and in discharging from parole, the members of the board acting thereon shall not be required to personally hear or see all the witnesses or evidence submitted to them for their action, but they may act on report submitted to them by their agents and employes, together with any pertinent and adequate information furnished to them by fellow members of the board or by others. (Emphasis added.)

The Board has also promulgated regulations dealing with the granting of paroles, both upon its own motion and upon application. The specific regulatory provision dealing with the granting of paroles upon the Board's own motion is found at 37 Pa. Code §63.1(a) and reads as follows:

§63.1. *Granting of parole.*

(a) The Board *may* grant paroles of its own motion pursuant to Section 22 of the Pennsylvania Board of Probation and Parole Law (61 P.S. §331.22). (Emphasis added.)

Both the statutory language contained in Section 22 of the Parole Act and the language contained in the Board's regulation at 37 Pa. Code §63.1(a) clearly indicate that the Board is under no duty to grant paroles of its own motion nor to consider prisoners for possible parole in the absence of an application for parole. Section 22 clearly states that while the Board has the *power* to grant paroles upon its own motion, the Board has the *duty* to consider applications filed by prisoners or on their behalf. *See Banks v. Pennsylvania Board of Probation and Parole,* 4 Pa. Commonwealth Ct. 198, 200 (1971) (prisoners have a right to apply to the Board for parole and are entitled under the Parole Act to have that application fairly and

properly processed by the Board). There is clearly no duty on the part of the Board to automatically consider for parole any prisoner who has completed his or her minimum term but has failed or neglected to apply to the Board for parole. The General Assembly's use of the term "power" when describing the Board's ability to grant paroles in the absence of an application and "duty" to consider parole applications filed by or on behalf of prisoners is significant. Also significant is the setting of time limits in which the Board must exercise its "duty" to process parole applications. No such time limit is set forth by the General Assembly with respect to the Board's exercising its power to grant a prisoner parole on its own motion. Where the words of a statute are clear, as they are here, the courts are not empowered to disregard the letter of the statute and the statute must be given its clear and obvious meaning. Section 1921 (b) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(b); *Hellertown Manufacturing Co. v. Commonwealth*, 480 Pa. 358, 390 A.2d 732 (1978); *Pennsylvania Retailer's Association, Reliable, Inc. v. Lazin*, 57 Pa. Commonwealth Ct. 232, 426 A.2d 712 (1981).

We are also cognizant that the General Assembly of this Commonwealth has vested broad discretion in the Board in matters of granting and revoking of paroles pertaining to prisoners falling under its jurisdiction. *Cox*, 507 Pa. at 619, 493 A.2d at 683; *Bradshaw v. Pennsylvania Board of Probation and Parole*, 75 Pa. Commonwealth Ct. 90, 461 A.2d 342 (1983). There is no question that a prisoner has no right under the Parole Act to be granted parole upon the expiration of his or her minimum term. *Commonwealth v. Brittingham*, 442 Pa. 241, 275 A.2d 83 (1971). The significance of the minimum term, then, is to set a parole eligibility date for the prisoner at which time

he or she is eligible to *apply* for parole and have that application fairly considered by the Board. *Rivenbark v. Pennsylvania Board of Probation and Parole,* Pa. , 501 A.2d 1110 (1985); *Krantz v. Pennsylvania Board of Probation and Parole,* 86 Pa. Commonwealth Ct. 38, 42, 483 A.2d 1044, 1047 (1984). Accordingly, the Board committed no error nor did it violate any of Weyand's statutory or constitutional rights when it did not exercise that discretion and consider him for parole on his one to two year sentence on its own motion where he failed to exercise his right under Section 22 to submit an application for parole. Therefore, while the Board has the *power* under Section 22 to consider and parole prisoners on its own motion in the absence of a parole application from the prisoner, it does not have a *duty* to so consider for possible parole those prisoners who have completed their minimum terms in the absence of an application for parole submitted on behalf of that prisoner. Weyand cannot escape the consequences of his own negligence in failing to submit a parole application to the Board at the expiration of the minimum term of his one to two year sentence by charging that the Board had a duty to consider him for parole sua sponte.

We shall now consider Weyand's contention that the Board erred when it declared him delinquent insofar as his initial two to four year sentence is concerned when it revoked his parole on that sentence on January 30, 1984. The gravamen of this contention is his assertion that he was "available" to the Board to serve the nine months backtime imposed for the parole violations when the revocation order was issued. We disagree. The parole revoked by the Board's revocation order of January 30, 1984 was Weyand's constructive parole regarding the two to four year sentence. "Constructive parole" occurs

where a prisoner, subject to consecutive sentences as was Weyand here, is administratively paroled on the initial sentence and immediately begins serving the minimum term of the consecutive, or detainer, sentence. *Hines v. Pennsylvania Board of Probation and Parole*, 491 Pa. 142, 146 n.2, 420 A.2d 381, 383 n.2 (1980). While still in prison, the prisoner is serving the detainer sentence and is considered "at liberty on parole" from the initial sentence. *Debnam v. Pennsylvania Board of Probation and Parole*, 71 Pa. Commonwealth Ct. 572, 574, 455 A.2d 297, 298 (1983). Since Weyand had not yet completed serving the minimum term of his detainer sentence, the Board did not have the power or authority to stop the running of that sentence to allow him to commence serving his parole violation backtime. Section 21 of the Parole Act, 61 P.S. §331.21, expressly prohibits the Board from exercising its power to parole any individual until the expiration of the minimum term fixed by either the sentencing court or the Pardon Board in a sentence which has been reduced by commutation. Since the Board did not have the power to stop the running of Weyand's detainer sentence to allow him to commence serving the parole violation backtime imposed on the two to four year sentence, and since a consecutive sentence and parole backtime *must* be served consecutively, *Commonwealth v. Dorian*, 503 Pa. 116, 468 A.2d 1091 (1983); *Rivera v. Pennsylvania Board of Probation and Parole*, 79 Pa. Commonwealth Ct. 558, 470 A.2d 1088 (1984), Weyand could not simultaneously serve his backtime and the minimum term of the detainer sentence so he was "unavailable" to the Board despite his presence in Somerset County Jail. The Board committed no error when it declared him delinquent on his initial sentence from the time it revoked parole on that sentence until Weyand was available again to the Board upon the expiration of

his minimum term and his being granted parole on the detainer sentence. From a practical point of view, the Board had no choice but to declare him delinquent on parole in that, due to his breach of his parole conditions, it had revoked his parole on the initial sentence and he was not able to be recommitted to serve the balance of that sentence mandated by the Board. We have previously recognized that a Board order declaring a parolee delinquent for control purposes is not a final order but merely an administrative procedure which earmarks the parolee's case for close review upon disposition of the intervening matter which precluded the Board assuming jurisdiction over the parolee at the present time. *See Passaro v. Pennsylvania Board of Probation and Parole*, 92 Pa. Commonwealth Ct. 442, 444, 499 A.2d 725, 726 (1985). We also recognized that the parolee is in no way prejudiced by such an administrative procedure. *Id.* That intervening matter, the minimum term of his detainer sentence, and his resulting delinquency terminated on February 4, 1985 when he was granted parole on his detainer sentence and again became available to serve the balance of his initial two to four year sentence. The time from the Board's revocation order of January 30, 1984 through February 4, 1985 is properly added to the maximum term of Weyand's initial two to four year sentence as he is entitled to no credit against that initial sentence for that period of time. *See* Section 21.1(b) of the Parole Act, 61 P.S. §331.21a (b) (technical parole violator receives no credit against initial sentence for time the parolee was delinquent on parole).

We now consider Weyand's final contention which is that the Board failed to provide him with a timely parole Violation Hearing.[9] Under Board regulations

---

[9] In his brief, Weyand also complains that his parole interview, to which he incorrectly refers as a "hearing," was also untimely as

found at 37 Pa. Code §71.2, the Board is required to provide an alleged parole violator with a preliminary hearing within 15 days of the Board's warrant being lodged and a Violation Hearing within 120 days from the date of the preliminary hearing. Weyand's preliminary hearing was held at the Somerset County Jail on October 13, 1983, eight days after the Board's warrant was lodged on October 5, 1983. The preliminary hearing was therefore timely under 37 Pa. Code §71.2 (3). Weyand's parole Violation Hearing was held at the Somerset County Jail on January 4, 1984, ninety days after his preliminary hearing. The parole

---

beyond five months past his parole eligibility date. Prior to rendering a decision on a prisoner's application for parole, the Board personally interviews each prisoner regarding the parole application. The interviews are informal in nature and usually conducted by a Board member, although hearing examiners are sometimes utilized at the various county prisons, and the prisoner's application, institutional record, and parole plan are reviewed. During fiscal 1982, 65% of all parole release interviews were conducted by Board members. 1982 Annual Report of the Pennsylvania Board of Probation and Parole, p. 20. We have previously recognized that prisoners are not entitled to a due process hearing on their parole applications. See *Counts v. Pennsylvania Board of Probation and Parole*, 87 Pa. Commonwealth Ct. 277, 487 A.2d 450 (1985). *Cf. Jago v. Van Curen*, 454 U.S. 14 (1981) (prisoner granted parole but not yet released from prison entitled to no due process hearing before that unexecuted parole is rescinded by the parole board). For the reasons expressed in that portion of the opinion dealing with the Board's duty under Section 22 of the Parole Act, 61 P.S. §331.22, to consider him for parole on its own motion, we reject this contention in that the Board has no duty to automatically consider prisoners for parole or to interview them for parole release where the prisoner has not applied for parole. That portion of Section 22 of the Parole Act which mandates that the Board must dispose of parole *applications* within six months of their filing is applicable by its terms only to parole *applications*, not paroles on the Board's own motion in the absence of an application. We do note, however, that Weyand was interviewed by the Board for parole within six months after the expiration of his minimum term. .

Violation Hearing was therefore timely under 37 Pa. Code §71.2(11).

Having found that the Board was under no statutory duty to consider him for parole on its own motion absent an application at the expiration of his minimum term, that the Board properly declared him delinquent for control purposes on the two to four year sentence effective on the date of its January 30, 1984 parole revocation order pertaining to that sentence, and that his parole hearings were timely under 37 Pa. Code §71.2, we shall affirm the Board's denial of administrative relief.

ORDER

Now, January 3, 1986, the Order of the Pennsylvania Board of Probation and Parole at Parole No. 9136-P, which denied administrative relief to James Weyand, is hereby affirmed.