531 A.2d 579

Paul Morgan Van Dyke, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

Submitted on briefs April 16, 1987, to Judges MAC-PHAIL and BARRY, and Senior Judge NARICK, sitting as a panel of three.

514

*Lewis J. Bott,* Assistant Public Defender, for petitioner.

*Arthur R. Thomas,* Assistant Chief Counsel, with him, *Robert A. Greevy,* Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE NARICK, September 24, 1987:

Paul Morgan Van Dyke (Petitioner) filed a petition for review with this Court seeking review of a denial by the Pennsylvania Board of Probation and Parole (Board) of a request to process a parole application. For the reasons set forth below, we affirm the actions of the Board.

The relevant facts are as follows: Petitioner is presently incarcerated at the Federal Penitentiary in Morgantown, West Virginia, serving an indeterminate sentence.[1] On or about February 5, 1985, Petitioner was arrested by the Pennsylvania State Police and

---

[1] There is conflicting evidence in the record as to the actual location of Petitioner. Petitioner's brief indicates that he is located in a federal prison in Danbury, Connecticut. However, the petition for review filed by Petitioner and the record indicate that Petitioner is in a federal penitentiary in Morgantown, West Virginia. Regardless, it is clear from the evidence before us that Petitioner is incarcerated in a federal penitentiary located outside of this Commonwealth.

charged with possession of a controlled substance and possession of drug paraphernalia. On June 6, 1985, Petitioner was sentenced by the Luzerne County Court of Common Pleas to a one to two year term of incarceration. Petitioner's Pennsylvania sentence is to run concurrent with his federal sentence.

Petitioner's minimum sentence on the state charge expired on June 6, 1986 and his maximum sentence expired on June 6, 1987. Some time prior to the expiration of the minimum sentence of his state charge, Petitioner requested that the Board consider him for parole.[2] The Board has refused to process Petitioner's application for parole because he is out-of-state, and, therefore, according to the Board, Petitioner is unable to be interviewed for parole as required by Section 22 of the Act of August 6, 1941 (Act), P.L. 761, *as amended*, 61 P.S. §331.22.

Although the time period for Petitioner's maximum sentence expired on June 6, 1987 and, therefore, based upon the factual circumstances herein, Petitioner's appeal is moot, we believe we are presented here with a legal question capable of repetition yet evading review.[3] For this reason, we will proceed to consider the legal question involved here—whether the Board's refusal to act upon Petitioner's application for parole because he is located in an out-of-state prison was proper.

Petitioner contends that the Board abused its discretion and acted unlawfully in refusing to consider Petitioner's request for parole on the pretext that Petitioner is located out-of-state. Petitioner argues that the

---

[2] The petition for review reveals that Petitioner is requesting parole because until such time as he is paroled on state charges, he will not be eligible for furloughs on his federal sentence nor will he be eligible for federal parole to a half-way house.

[3] *See Commonwealth v. Frattarola*, 336 Pa. Superior Ct. 411, 485 A.2d 1147 (1984).

Board's refusal to even consider Petitioner for parole is unlawful and an abuse of discretion pursuant to Section 19 of the Parole Act, 61 P.S. §331.19.[4]

The Board counters with Section 22 of the Act, 61 P.S. §331.22 which provides that before an application for parole can be granted or dismissed, a district supervisor shall interview a prospective parolee in person within six months prior to the granting or dismissal of the parole application. The Board further argues that because Petitioner is incarcerated out-of-state and is in federal custody, it is without authority to act pursuant to Section 21 of the Act, 61 P.S. §331.21.

The General Assembly has granted the Board broad discretion in parole matters falling under its jurisdiction. *See Weyand v. Pennsylvania Board of Probation and Parole,* 94 Pa. Commonwealth Ct. 32, 503 A.2d 80 (1986). However, the Board only possesses those powers conferred upon it by the General Assembly and the Act, 61 P.S. §§331.1-331.4.

Two sections of the Act which discuss the powers of the Board with respect to parolees are Section 17 of the Act[5] and Section 21 of the Act.[6] Section 17 of the Act provides in relevant part:

---

[4] Section 19 of the Act provides that it shall be the duty of the Board to

[P]rocure information as full and complete as may be obtainable with regard to the character, mental characteristics, habits, . . . The Board shall further cause the conduct of the person in prison and his physical, mental and behavior condition and history, . . . to be investigated and reported . . . said investigation shall be made by the Board so far as may be practicable while the case is recent and in granting paroles the Board shall consider the nature and character of the offense committed, . . . the general character and history of the prisoner. . . .

[5] 61 P.S. §331.17.

[6] Section 2 of the Act, 61 P.S. §331.2 also sets forth the general powers and duties of the Board.

> *The Board shall have exclusive power to parole and reparole,* commit and recommit for violations of parole, and to discharge from parole *all persons heretofore or hereafter sentenced by any court in this Commonwealth to imprisonment in any prison or penal institution thereof,* whether the same be a state or county penitentiary, prison or penal institution, as hereinafter provided. (Emphasis added.)

Section 21 of the Act pertinently provides: "The Board is hereby authorized to release on parole any convict *confined in any penal institution of this Commonwealth* as to whom power to parole is herein granted". (Emphasis added.)

Thus, we note that our perusal of Sections 17 and 21 of the Act reveals that there is no provision regarding out-of-state prisoners. Rather, these provisions limit the Board's jurisdiction to parole any person confined in a penal institution of this Commonwealth for a period of two years or more.[7] Therefore, in order for the Board to exercise its parole authority, a prisoner must be incarcerated within the confines of this Commonwealth.[8]

Turning to the Board's argument that it could not begin processing Petitioner's application until Petitioner is returned to this Commonwealth and able to be interviewed for parole pursuant to Section 22 of the Act, 61 P.S. §331.22, we agree. Section 22 of the Act which requires the Board to dispose of applications for parole

---

[7] Section 17 of the Act limits the Board's jurisdiction to anyone sentenced to a term of imprisonment for a period of two years or more.

[8] The logic of this limitation on the Board's jurisdiction is that the Board cannot order an official from another state to release a prisoner on parole. It could also be said that the legislature did not intend parole district supervisors to travel around the country interviewing potential parolees.

within six months also pertinently provides that "In no case shall a parole be granted, or an application for parole be dismissed unless a district supervisor shall have seen and heard him in person". Section 11 of the Act, 61 P.S. §331.11 requires that "Each district parole office shall be in charge of a district supervisor who shall be appointed by the board, with the approval of the Governor . . . " . Thus, since Petitioner is not within a parole district of this Commonwealth, the Board is not required to process his application for parole. Moreover, the six month time period of Section 22 of the Act cannot begin to run until a prisoner is within the confines of this Commonwealth.[9]

Therefore, the Board does not have authority to act on a parole application with regard to a prisoner who is incarcerated in a prison outside of this state and cannot exercise its parole authority until the prisoner is returned to this Commonwealth.

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 24th day of September, 1987, the order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is affirmed.

---

[9] We briefly note that although Petitioner does not argue the applicability of the Uniform Act for out-of-state parolee supervision of June 25, 1937, P.L. 2086, 61 P.S. §321 *et seq*. or the Interstate Corrections Compact, Act of December 30, 1974, P.L. 1075, 61 P.S. §1062, the Board does briefly note that both of these Acts do not apply to the instant matter. We agree. With respect to probation and parole, the Uniform Act for out-of-state parole supervision and the Interstate Corrections Compact apply to individuals who have *already* been granted probation or parole. Both of these Acts apply to individuals who are placed on probation or released on parole from one state and are permitted to reside in another state. It does not apply to an individual who has merely made an application for parole to one state while located in a prison in another state.