IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Oliver Lee,                          :
                    Petitioner       :
                                     :
            v.                       :    No. 1506 C.D. 2018
                                     :    Submitted: June 21, 2019
Pennsylvania Board of Probation and  :
Parole,                              :
                    Respondent       :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: September 24, 2019

        Oliver Lee petitions for review of an adjudication of the Pennsylvania
Board of Probation and Parole (Board) that did not give him sentence credit for time
spent at three residential facilities while on parole.  The Board concluded that Lee
did not prove that the restrictions placed on him made these facilities the functional
equivalent of incarceration.  Lee argues the evidence shows that each facility was
the equivalent of a prison.  Discerning no merit to this argument, we affirm.

        On March 28, 2007, the Court of Common Pleas of Philadelphia
County sentenced Lee to serve five to ten years in a state correctional institution for
burglary.  Lee's minimum sentence date was September 20, 2011; his maximum
sentence date was September 20, 2016.

        On May 23, 2012, Lee was released on parole to reside in the Kintock-
Erie Community Corrections Facility. On June 21, 2012, when he failed to return to
the facility, the Board declared him delinquent and issued a warrant for his arrest.
On July 31, 2012, Lee was detained on the Board's warrant and recommitted as a

technical parole violator for changing his residence without permission and failing to complete the residential program at Kintock-Erie.

On February 13, 2014, Lee was reparoled to Kintock-Erie. On May 21, 2014, after two positive drug tests for tetrahydrocannabinol, the active ingredient in marijuana, he was transferred to the Luzerne Treatment Center, a substance abuse rehabilitation facility. Lee remained there until July 17, 2014, when he deployed the fire alarm and absconded. Ultimately, Lee was recommitted as a technical parole violator for changing his residence without permission and failing to complete the treatment program.

On January 17, 2015, Lee was reparoled to the Philadelphia Community Corrections Center #2 (Philadelphia CCC). Lee remained there until February 9, 2015, when his placement was terminated upon discovery of his possession of synthetic marijuana. As a result, Lee was returned to prison. On April 22, 2015, Lee was placed into "Courage To Change," a drug recovery program.[1] On May 19, 2015, when Lee was dismissed from the drug recovery program, parole staff referred him to a homeless shelter.

On May 28, 2015, Lee was arrested in Philadelphia for robbery and related offenses. He was incarcerated on the new charges in lieu of bail, which he did not post.[2] On April 28, 2016, Lee pleaded guilty to robbery and possession of an instrument of crime; he was sentenced to eight to sixteen years in a state correctional institution.

The Board scheduled a parole revocation hearing in response to Lee's new criminal convictions. Lee waived the hearing and admitted that the new

---

[1] Lee does not request credit for the time spent at Courage To Change.

[2] The Board lodged a detainer warrant.

convictions occurred while he was on parole. The Board recommitted Lee as a convicted parole violator and gave him no credit for the time he spent at Kintock-Erie, the Luzerne Treatment Center or the Philadelphia CCC. As such, his maximum sentence date was recalculated to be July 14, 2018.

Lee petitioned for administrative review, arguing that he was entitled to credit for the time he spent at all three facilities. Specifically, Lee sought credit for the time he spent at Kintock-Erie from May 24, 2012, to June 21, 2012, and from February 14, 2014, to May 12, 2014; the time he spent at the Luzerne Treatment Center from May 12, 2014, to July 17, 2014; and the time he spent at Philadelphia CCC from January 17, 2015, to February 9, 2015. He alleged that the restrictions placed on him made his stay at all three facilities the equivalent of penal incarceration. The Board scheduled an evidentiary hearing.

At the hearing,[3] Lee testified about each facility. With respect to Kintock-Erie, Lee testified that he was required "to do programs[;]" was restricted from leaving; and received all his meals at the center. Notes of Testimony, 5/16/2018 at 12 (N.T. __); Certified Record at 179 (C.R. __). He testified that barbed wire surrounded the facility and that he could not leave without permission.

Juliet Holliday, a senior case manager at Kintock-Erie, testified that parolees are permitted to leave the center unescorted for many reasons. These include medical appointments, school and work. In any case, staff members are not authorized to use physical force to prevent a parolee from leaving the center for unauthorized reasons. To this, Lee responded that if he left the center without permission he would face "disciplinary action that would actually bring [him] back

---

[3] Lee waived his right to counsel.

3

to prison because it's not like [he could] leave and there's no consequences[.]" N.T. 18; C.R. 185.

With respect to the Philadelphia CCC, Lee testified that a barbed wire fence surrounded the center. He was permitted to leave only if he "was granted a pass." N.T. 19; C.R. 186. He would not be physically restrained if he left without a pass, but he "would be sanctioned and [he] would be in trouble." *Id.* Therefore, he was not a free person while there.

Jacqueline Rupert, the center director, testified that the Philadelphia CCC does not have barbed wire or a surrounding fence.[4] She stated that parolees may leave the center unescorted for various reasons, including medical treatment, work, errands or visits with family and friends. The staff is not authorized to use physical force to prevent parolees from leaving. The door to the center is locked, but staff members are required to open the door for any parolee that requests to leave, with or without permission. Parolees that leave without authorization from the center are treated as absconders.

With respect to the Luzerne Treatment Center, Lee testified he was not permitted to leave for any reason. He "was fed [his] meals inside the facility [and] had to complete programs within the facility." N.T. 29; C.R. 196. On cross-examination, Lee acknowledged the Luzerne Treatment Center was an inpatient medical center and that he was there for drug abuse.

Viviam Agostini, the facility director at Luzerne Treatment Center, testified about the security procedures. She explained that at the inpatient treatment center, all patients, including parolees, are generally confined to the facility, but they do have recreational time outside. If parolees have a medical appointment, "we

---

[4] There is a fence surrounding the parking lot.

4

would transport them and drop them off, and then pick them back up." N.T. 33; C.R. 200. If a parolee decided he no longer wanted treatment, he would be permitted to leave unescorted.

The Board held that the time Lee spent at the three facilities was not sufficiently restrictive to warrant credit towards his sentence. Lee filed an administrative appeal that was denied by the Board without further analysis.

Lee has petitioned for this Court's review, raising one issue.[5] Lee argues the Board erred in not giving him sentence credit for time he spent at Kintock-Erie, the Philadelphia CCC and the Luzerne Treatment Center. He argues that his evidence proved that the restrictions at the three facilities made them the equivalent of incarceration.

We begin with a review of the law. The Prisons and Parole Code (Parole Code) provides that parolees who are recommitted as convicted parole violators "shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), *shall be given no credit for the time at liberty on parole*." 61 Pa. C.S. §6138(a)(2) (emphasis added).[6] The Parole Code does not

---

[5] This Court's review determines whether the Board's findings are supported by substantial evidence, whether an error of law was committed, or whether any of the parolee's constitutional rights were violated. *Harden v. Pennsylvania Board of Probation and Parole*, 980 A.2d 691, 695 n.3 (Pa. Cmwlth. 2009).

[6] Section 6138(a)(2.1) of the Parole Code permits the Board to exercise its discretion and award credit under certain circumstances. Pertinent to this case, the Board has no discretion to award credit if the new criminal conviction is designated a "crime of violence as defined in 42 Pa. C.S. §9714(g)…." 61 Pa. C.S. §6138(a)(2.1)(i). Section 9714(g) of the Sentencing Code lists "robbery as defined in 18 Pa. C.S. §3701(a)(1)(i), (ii), or (iii)" as a "crime of violence." 42 Pa. C.S. §9714(g). Lee was convicted of robbery under 18 Pa.C.S. §3701(a)(1)(ii). C.R. 106. As such, his new criminal conviction is a crime of violence and the Board has no discretion to award credit for time spent at liberty on parole.

define "at liberty on parole," but our Supreme Court provided guidance in *Cox v. Pennsylvania Board of Probation and Parole*, 493 A.2d 680 (Pa. 1985).

In *Cox*, the Pennsylvania Supreme Court identified three principles that guide the court's determination on whether the parolee's placement facility "is a prison equivalent[.]" *Id.* at 681. First, because entry into a parole program is voluntary, "attendance there is presumed to be 'at liberty on parole.'" *Id.* Second, the parolee bears the burden of showing that the facility imposed sufficient restrictions on his liberty to warrant sentence credit. *Id.* at 683. Third, courts should not interfere with the Board's decision to grant or deny credit, unless "it acts arbitrarily or plainly abuses its discretion." *Id.* In evaluating whether restrictions constitute incarceration, this Court has explained that the most important factors are "whether the ... resident ... is locked in *and* whether the [resident] may leave without being physically restrained." *Medina v. Pennsylvania Board of Probation and Parole*, 120 A.3d 1116, 1120-21 (Pa. Cmwlth. 2015) (citing *Figueroa v. Pennsylvania Board of Probation and Parole*, 900 A.2d 949, 952 (Pa. Cmwlth. 2006)).

Lee focuses on certain restrictions. He notes that Kintock-Erie was surrounded by barbed wire, the door was locked and individuals leaving the facility were monitored. The Philadelphia CCC was locked and he needed a pass to leave. If he left without permission, he would be treated as an absconder. The Luzerne Treatment Center required him to have all his meals on site, and he was not permitted to leave for any reason.

The Board responds that these facts are not relevant or were refuted. Testimony from a manager at each facility established that no person could use physical force to prevent Lee from leaving. Even where the door to the facility was

6

locked, Lee was able to leave at any time, without permission, simply by asking a staff member to open the door.

We agree with the Board. In *Willis v. Pennsylvania Board of Probation and Parole*, 842 A.2d 490 (Pa. Cmwlth. 2004), a parolee claimed his stay at an in-patient treatment center was the equivalent of incarceration because, *inter alia*, the doors to the facility were locked. However, the treatment center director testified that the doors were locked to keep "people out," not to prevent parolees from leaving. *Id*. at 491. A parolee could leave upon request and staff would not attempt to restrain them. The parolee would not be charged with the crime of escape. We explained as follows:

> While temporary residency at the [treatment center] was a condition of parole, and albeit, a restraint on [the parolee's] liberty, it was not so restrictive as to constitute a form of incarceration or detention. *Although leaving the [treatment center] would have constituted a violation of [the parolee's] parole and resulted in his immediate arrest, such a result is no different than that which would occur upon the violation of any other condition of parole.* Based upon our review of the record, we conclude that the Board has neither acted arbitrarily nor abused its discretion in its determination that the circumstances at the [treatment center] were not so restrictive as to permit credit on [the parolee's] original sentence.

*Id.* at 494. (emphasis added).

A parolee's subjective impressions are not dispositive. In *Harden v. Pennsylvania Board of Probation and Parole*, 980 A.2d 691 (Pa. Cmwlth. 2009), we explained as follows:

> "For a parolee to overcome the presumption that time spent in a residential facility is *not* the equivalent of a prison, he must do more than recite his subjective impressions." (emphasis in original). The parolee must lay an evidentiary foundation….

7

> Here, [the parolee] simply assumed that the essential quality of a prison is the use of a schedule…. [Instead], "[t]he essentials of prison, as opposed to other institutional settings, is the inability to walk away without having to unlock a door; without committing a crime; and without risking physical restraint."

*Id*. at 700-01 (internal citation and footnote omitted).

In this case, the Board accepted the testimony of the three facility witnesses that Lee could leave at any time, without fear of restraint, and he would not be charged with criminal escape. Rather, he would be arrested for violating parole. Further, all three facilities permitted unescorted leave. For example, Holliday testified that at Kintock-Erie, parolees may leave unescorted for medical appointments, for school and work; Rupert testified that the Philadelphia CCC allowed unescorted leave for work, errands, or visits with family and friends. Agostini testified that the Luzerne Treatment Center permitted outdoor recreation time and provided transportation to medical appointments, where the parolee remained unchaperoned.

We reject Lee's claim that he met his burden of proving the conditions at the three facilities made them the equivalent of incarceration. He could leave, without threat of physical restraint, any of the facilities at any time, and not be charged with the crime of escape. Accordingly, we affirm the order of the Board.

_____
MARY HANNAH LEAVITT, President Judge

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Oliver Lee,                                :
             Petitioner           :
                               :
            v.                         :  No. 1506 C.D. 2018
                               :
Pennsylvania Board of Probation and        :
Parole,                                    :
             Respondent           :

## **O R D E R**

AND NOW, this 24th day of September, 2019, the order of the Pennsylvania Board of Probation and Parole, dated October 18, 2018, is hereby AFFIRMED.

                               _____
                               MARY HANNAH LEAVITT, President Judge