IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronald Williams,                          :
                                          :
                    Petitioner            :
                                          :
         v.                               :  No.  1220 C.D. 2019
                                          :  Submitted:  January 31, 2020
Pennsylvania Board of                     :
Probation and Parole,                     :
                                          :
                    Respondent            :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                FILED:  March 19, 2021


         Ronald Williams (Williams) petitions for review of an order of the
Pennsylvania Board of Probation and Parole (Board)[2] that dismissed as untimely
his request for administrative relief concerning a previous order of the Board.  In
its previous order, the Board recommitted Williams as a convicted parole violator
(CPV) and recalculated his maximum sentence date with no credit for time spent at

---

[1] This case was assigned to the opinion writer before January 4, 2021, when President
Judge Leavitt served as President Judge.

[2] Following the filing of the petition for review, the Pennsylvania Board of Probation and
Parole was renamed the Pennsylvania Parole Board.  *See* Sections 15, 16, and 16.1 of the Act of
December 18, 2019, P.L. 776, No. 115 (effective February 18, 2020); *see also* Sections 6101 and
6111(a) of the Prisons and Parole Code, *as amended*, 61 Pa. C.S. §§ 6101, 6111(a).

liberty on parole. Williams argues that the Board erred in dismissing his request for administrative relief as untimely. Upon review, we affirm.

In 1993, Williams was convicted of third-degree murder and sentenced to a term of 7 to 20 years in prison. Certified Record (C.R.) at 1. Williams' original maximum sentence date was January 15, 2013. *Id.* On December 1, 2003, the Board released Williams on parole to the Coleman Center, a community corrections facility. C.R. at 8-9.

On November 17, 2004, Williams was arrested on charges of theft by receiving stolen property and unauthorized use of a vehicle, and confined in the Philadelphia County Jail. C.R. at 12-13, 17, 19-20. The Board issued a warrant to commit and detain Williams for a parole violation. C.R. at 14-15. The Board charged Williams as a technical parole violator (TPV) based on his failure to maintain regular contact with parole supervision staff and to remain inside his approved residence during delineated hours as instructed. C.R. at 16. Williams waived his rights to preliminary and panel hearings, and, during a November 30, 2004 hearing held before a hearing examiner at which Williams was represented by counsel, Williams admitted that he committed a technical parole violation by failing to remain in his residence during the hours directed by his parole supervisors. C.R. at 27. In December 2004, police declined to prosecute the new criminal charges against Williams. C.R. at 17. By decision mailed on March 24, 2005, the Board recommitted Williams as a TPV to serve six months of backtime. C.R. at 32. His maximum sentence date remained January 15, 2013. *Id.* On October 27, 2005, Williams was paroled. C.R. at 33-36.

On December 7, 2005, police arrested Williams and charged him with manufacture, delivery, or possession with intent to distribute drugs and knowingly

and intentionally possessing drugs. C.R. at 43, 47. On December 8, 2005, the Board issued another warrant to commit and detain Williams for a parole violation. Williams waived his right to a detention hearing and, by decision recorded on January 27, 2006, the Board detained Williams pending disposition of the new criminal charges against him. C.R. at 50-54. The new charges filed against Williams on December 7, 2005, were later dismissed on May 25, 2007. C.R. at 59.

On December 18, 2008, the City of Philadelphia police arrested Williams following a search of a residence in which he appeared to be living. C.R. at 64. Police charged Williams with various drug-related felonies and misdemeanors, prohibited possession of a firearm, cruelty to animals, possession of criminal instruments, theft by receiving stolen property, tampering with evidence, and criminal conspiracy. *Id.* On December 19, 2008, the Board issued another warrant to commit and detain Williams for a parole violation. C.R. at 61. That same day, the Philadelphia County Municipal Court set bail at $500,000.00, which Williams did not post. C.R. at 92. The Board charged Williams as a TPV for changing his residence without approval of parole supervisors.[3] C.R. at 62. Williams waived his rights to preliminary and panel hearings and, by order dated February 5, 2009, the Board detained Williams pending disposition of the new criminal charges against him. C.R. at 71. By the same order, and at Williams' request, the Board continued the hearing on his technical parole violation until disposition of all pending criminal charges. *Id.*

---

[3] The Board noted that the residence that the police searched in connection with Williams' December 18, 2008 arrest was not Williams' approved residence, and that the police discovered utility bills and other documents indicating that Williams was living at the residence that it had searched. C.R. at 62.

On February 2, 2011, Williams pled guilty to manufacture, delivery, or possession with intent to manufacture or deliver drugs, prohibited possession of a firearm, and ownership or possession of an animal for fighting. C.R. at 73. He was sentenced to a term of incarceration of 6 to 12 years in a state correctional institution (SCI). *Id.* The Board charged Williams as a CPV based on his new convictions. C.R. at 75. On March 15, 2011, Williams waived his rights to counsel and to revocation and violation hearings. C.R. at 76-79. A hearing examiner determined that Williams should be recommitted both as a TPV, based on his admission to a technical violation, and as a CPV, based on his new convictions. C.R. at 85-90. On May 1, 2011, the Board revoked Williams' parole via the second signature on the hearing report. *Id.* at 90.

By decision mailed on May 12, 2011, the Board recommitted Williams as a TPV to serve 9 months' backtime, and as a CPV to serve 60 months' backtime concurrently, for a total of 60 months' backtime. C.R. at 113-14. The Board denied Williams credit for 353 days that he spent at liberty on parole from December 1, 2003, to November 18, 2004, which left 2,990 days remaining on Williams' original sentence. C.R. at 111. The Board awarded Williams credit for 550 days he spent in custody under the Board's detainer based on his December 2005 arrest, which left a balance of 2,440 days (2,990 days – 550 days) remaining on his original sentence. *Id.* The Board added the balance of 2,440 days to his recommitment date of May 1, 2011, and recalculated Williams' new maximum sentence date as January 4, 2018. *Id.*

On June 9, 2011, Williams filed a *pro se* petition for administrative review of the Board's May 12, 2011 decision on the basis that the Board erred or abused its discretion in recalculating his maximum sentence date. C.R. at 123-28.

4

Among several arguments that he made, Williams asserted that the Board erred in denying him credit for the 353 days that he spent at liberty on parole before his November 2004 arrest and the 45 days that he was at liberty before his December 2005 arrest, for a total of 398 days at liberty on parole. *Id.* at 127. In response, the Board scheduled an evidentiary hearing to determine, pursuant to *Cox v. Board of Probation and Parole*, 493 A.2d 680 (Pa. 1985),[4] the custodial nature of Williams' time on parole at the Coleman Center prior to his November 2004 arrest. C.R. at 136, 142, 177. Following the hearing, by decision mailed on December 5, 2011, the Board concluded that Williams was not entitled to credit, pursuant to *Cox*, for any of his time spent at the Coleman Center, and declined to recalculate his maximum sentence date. C.R. at 182-84.

On December 27, 2011, Williams filed a request for administrative relief concerning the Board's December 5, 2011 decision. C.R. at 186-88. First, he argued that, because the charges on which he was arrested in November 2004 and December 2005 were ultimately dismissed, the Board should have awarded him credit for the entire time he was detained between December 1, 2003, and June 20, 2007 (not only through June 11, 2007, as the Board had done). *Id.* at 187. Second, Williams challenged the Board's conclusion concerning the custodial nature of the Coleman Center, arguing that he demonstrated that he is entitled to credit for his time there. *Id.* at 187-88. By decision mailed on February 24, 2012, the Board recalculated Williams' maximum sentence date as December 26, 2017.

---

[4] Pursuant to *Cox*, a parolee is entitled to credit for time spent in an inpatient rehabilitation facility "if the nature of the restrictions placed on participants can be equated with custody or imprisonment." *Willis v. Pennsylvania Board of Probation and Parole*, 842 A.2d 490, 492 (Pa. Cmwlth. 2004) (citing *Cox*).

C.R. at 196.[5]  In doing so, the Board credited Williams with an additional nine days of confinement time between June 11, 2007, and June 20, 2007, representing time that he was detained by the Board as a result of his December 2005 arrest. C.R. at 194.  Contemporaneous with its February 24, 2012 order, the Board sent a letter stating that, because it recalculated Williams' maximum sentence date, his December 27, 2011 request for administrative relief was moot.  C.R. at 197.

On March 16, 2012, Williams filed a request for administrative relief concerning the Board's February 24, 2012 order.  C.R. at 201-03.  Williams acknowledged that the Board recalculated his maximum date in his favor, but he argued that the Board failed to address other arguments he raised in his December 27, 2011 request for administrative relief.  *Id.* at 201.  Specifically, he claimed that he is entitled to credit for his time at the Coleman Center, and that he is entitled to credit for the 45 days that he was at liberty on parole before his December 2005 arrest.  *Id*. at 202.  By decision mailed on October 2, 2012, the Board affirmed its February 24, 2012 decision.  C.R. at 207-08.

On June 12, 2018, Williams filed a request for administrative review. C.R. at 209.  Williams challenged the Board's recalculation of his maximum sentence date on the basis of an alleged change in the law, which, he claimed, granted the Board discretion to award credit for time for which it had previously

---

[5] Although Williams' maximum sentence date with respect to his original sentence has passed, this matter is not rendered moot.  Williams remains incarcerated at SCI-Dallas, serving the 6- to 12-year sentence that he received in 2011.  *See Inmate Locator*, Pennsylvania Department of Corrections, http://inmatelocator.cor.pa.gov (last visited March 18, 2021). Williams must have first completed the backtime imposed by the Board pertaining to his original sentence before starting to serve his more recent 2011 sentence.  *See* 61 Pa. C.S. §6138(a)(5)(i). Accordingly, if, as Williams argues, the Board incorrectly recalculated his maximum date, it may have improperly delayed his ultimate release from state custody.

6

denied credit. *Id.* By decision mailed on August 2, 2018, the Board noted that the challenged decision was mailed on February 24, 2012, and dismissed Williams' request for administrative review as untimely. C.R. at 211.

On March 11, 2019, Williams filed a request for administrative review *nunc pro tunc*. C.R. at 213. He again challenged the Board's recalculation of his maximum sentence date and denial of credit for time at liberty, this time based on our decision in *Penjuke v. Pennsylvania Board of Probation and Parole*, 203 A.3d 401 (Pa. Cmwlth. 2019), *appeal denied*, 228 A.3d 254 (Pa. 2020).[6] Williams then filed correspondence on May 28, 2019, following up on his March 2019 request for administrative review. C.R. at 215. By decision mailed on August 9, 2019, the Board once again noted that Williams was challenging its decision mailed February 24, 2012, and denied Williams' request and subsequent correspondence as untimely. Williams then petitioned this Court for review.[7]

On appeal, Williams argues that our decision in *Penjuke* constitutes a change in the law that should qualify as an exception to the time period for filing an administrative appeal. Based on that assertion, he contends that the Board erred in dismissing his request for administrative review as untimely, and should have instead applied *Penjuke* retroactively to its February 24, 2012 decision and granted

---

[6] In *Penjuke*, we held that "when the Board recommits a CPV, it cannot revoke the credit that a parolee has been granted in a previous parole that resulted in recommitment as a TPV." *Penjuke*, 203 A.3d at 420.

[7] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication was in accordance with law, and whether necessary findings were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Miskovitch v. Pennsylvania Board of Probation and Parole*, 77 A.3d 66, 70 n.4 (Pa. Cmwlth. 2013), *appeal denied*, 87 A.3d 322 (Pa. 2014).

Williams credit for 353 days[8] of parole liberty. In support of this argument, Williams cites two of our prior decisions wherein, he asserts, we have applied appellate decisions retroactively in cases analogous to the instant matter. *See Passarella v. Pennsylvania Board of Probation and Parole*, 217 A.3d 919, 927 (Pa. Cmwlth. 2019); *Threats v. Pennsylvania Board of Probation and Parole*, 518 A.2d 327, 328 (Pa. Cmwlth. 1986), *rev'd*, 553 A.2d 906 (Pa. 1989).

The Board responds that it properly denied Williams' appeal as untimely. The Board states that, in order to accept Williams' appeal *nunc pro tunc*, there must be extraordinary circumstances justifying the delay in filing. The Board argues that a change in the law after a final decision by the Board does not constitute an extraordinary circumstance justifying *nunc pro tunc* relief. The Board also emphasizes that *Passarella* applies only to cases where the appeal was pending at the time the law changed, not to appeals filed thereafter, as in this matter.

The Board's regulations provide that administrative appeals and petitions for administrative review of a Board decision relating to parole revocation must be received within 30 days of the mailing date of the Board's order. 37 Pa. Code §73.1(a)(1), (b)(1); *see also* 61 Pa. C.S. §6113(d)(1); *Smith v. Pennsylvania Board of Probation and Parole*, 81 A.3d 1091, 1094 (Pa. Cmwlth. 2013). Further, second or subsequent appeals or petitions for administrative review and those that are out of time under these rules will not be received. 37 Pa. Code §73.1(a)(4), (b)(3). The 30-day period for an appeal of a revocation

---

[8] Before the Board and in his petition for review, Williams argued that he was entitled to credit for more than 353 days. In his brief in this Court, however, he has expressly limited his argument for credit to the period from December 1, 2003, to November 18, 2004, which amounts to 353 days. (*See* Williams' Br. at 10 n.1 (citing C.R. at 119).)

8

decision is jurisdictional and cannot be extended absent exceptional circumstances that warrant *nunc pro tunc* relief. *Smith*, 81 A.3d at 1094. These include a showing of fraud, a breakdown of the administrative process, non-negligent circumstances affecting the petitioner, or the intervening negligence of the petitioner's appointed counsel, which deprives the petitioner of effective assistance of counsel. *Id.* Non-negligent circumstances justify *nunc pro tunc* relief "only in unique and compelling cases in which the [petitioner] has clearly established that [he] attempted to file an appeal, but unforeseeable and unavoidable events precluded [him] from actually doing so." *Criss v. Wise*, 781 A.2d 1156, 1160 (Pa. 2001).

As described above, Williams filed his request for administrative review on March 11, 2019, more than seven years after the Board mailed its decision on February 24, 2012. He does not allege negligence, fraud, an administrative breakdown, or ineffective assistance of counsel to justify this delay. He argues only that our decision in *Penjuke*, which changed the law concerning the Board's calculation of maximum sentence dates, justifies *nunc pro tunc* relief. We disagree.

Williams cites no authority, and we find none, for the proposition that a change in the law alone justifies a *nunc pro tunc* appeal of every prior Board decision that is inconsistent with the new rule, regardless of time. Nor does he assert that his case is unique in a way that justifies *nunc pro tunc* relief based upon non-negligent circumstances. *See Criss*, 781 A.2d at 1160. The instant matter does not present the exceptional circumstances we have described as warranting consideration of an untimely appeal, which is beyond the Board's jurisdiction in all but exceptional cases. *See Smith*, 81 A.3d at 1094. To the extent Williams invites

us to depart from our well-established doctrine regarding *nunc pro tunc* relief, we decline to do so.

Moreover, the decisions upon which Williams relies are distinguishable. In *Threats*, the petitioner made an untimely request for administrative relief more than seven months after the relevant Board decision, citing a recent decision[9] announcing a change in the law applicable to backtime calculations. *Threats*, 518 A.2d at 328. Despite the untimeliness of the request, the Board did *not* dismiss it as untimely, but considered the merits of the petitioner's request and denied relief. *Id.* We first emphasized the jurisdictional nature of timeliness, stating that the Board "*could not* address a request for administrative relief after thirty days from the date of its original order." *Id.* (emphasis added). Because of this, we elected to treat the Board's decision on the merits as if the petitioner had requested, and the Board had granted, reconsideration (as opposed to administrative relief), which the Board may grant at any time. Notably, the petitioner did not raise, and we did not address, the prospect of administrative relief *nunc pro tunc*. Here, unlike in *Threats*, the Board *did* dismiss Williams' request for administrative relief as untimely, so we need not imagine a plausible basis for the Board to have taken the opposite action, as we did in *Threats*. Accordingly, our reasoning concerning requests for reconsideration does not apply.

Finally, we address Williams' argument that this Court has expressly held that *Penjuke* applies retroactively. In *Passarella*, we specifically considered

---

[9] *See Rivenbark v. Pennsylvania Board of Probation and Parole*, 501 A.2d 1110, 1114 (Pa. 1985) (holding that "a parolee may not be recommitted as a technical violator based upon an act constituting a new crime of which he is convicted").

whether to apply *Penjuke* retroactively to earlier Board decisions, as Williams requests that we do here. However, in *Passarella*, both the administrative appeal and the petition for review in this Court were apparently filed timely. *Passarella*, 217 A.3d at 922-23, 927. Neither was filed after or in response to a change in the law; instead, the petition for review was already pending in this Court when we decided *Penjuke*. *Id.* at 927. Based on that procedural posture, we concluded that *Penjuke* should apply retroactively, but only "to cases pending on appeal since it was decided[.]" *Id.* We cautioned that "our decision [in *Passarella*] . . . only affects cases with similar procedural situations; *i.e.*, those cases still pending on appeal to this Court since *Penjuke* was decided, which represent a relatively *finite* number of cases." *Id.* (emphasis added). Notably, we did not extend our reasoning to untimely appeals or requests for *nunc pro tunc* relief, which, contrary to our rationale in *Passarella*, would invite appeals of a relatively *infinite* number of prior Board decisions. By its own terms, *Passarella* does not apply to this case, because Williams' appeal was not pending when *Penjuke* was decided.

For these reasons, we conclude that the Board did not err in dismissing Williams' request for administrative relief as untimely. Accordingly, we affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronald Williams,                                          :
                                                         :
                    Petitioner                           :
                                                         :
            v.                                           : No.  1220 C.D. 2019
                                                         :
Pennsylvania Board of                                    :
Probation and Parole,                                    :
                                                         :
                    Respondent :

# **O R D E R**

AND NOW, this 19th day of March, 2021, the order of the Pennsylvania Board of Probation and Parole, mailed August 9, 2019, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge