IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Shivers,                           :
                Petitioner        :
                           :
        v.                     :     No. 969 C.D. 2024
                           :
Pennsylvania Parole Board,     :     Submitted: December 8, 2025
                Respondent   :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

***OPINION NOT REPORTED***

MEMORANUM OPINION
BY JUDGE McCULLOUGH                FILED: January 20, 2026

Jeffrey Shivers (Petitioner), by counsel, petitions this Court for review of a decision of the Pennsylvania Parole Board (Board) mailed on April 10, 2024. Therein, the Board denied Petitioner's request for administrative relief from the Board's prior decision mailed on October 19, 2023, which recalculated his sentence maximum date and denied him credit for time he spent in an inpatient drug and alcohol treatment facility while on parole. Upon review, we affirm the Board's decision.

## I.   Background and Procedural History

On June 3, 2009, Petitioner was sentenced in Berks County on drug charges to a period of confinement of not less than 3 years and 11 months nor more than 13 years' confinement with a parole violation maximum date of September 30, 2022. (Certified Record (C.R.) at 17.) On July 28, 2014, the Board released

Petitioner on parole from a State Correctional Institution (SCI) into a specialized Community Corrections Center (CCC). (C.R. at 6.) On September 29, 2015, the Board issued a decision detaining Petitioner pending disposition of new criminal charges in Allegheny County. (C.R. at 11.) On March 5, 2017, after Petitioner was convicted of the charges, which included retail theft, fleeing or attempting to elude an officer, resisting arrest, and recklessly endangering another person, the Board recommitted Petitioner as a convicted parole violator (CPV) to serve 18 months' backtime[1] and established a new maximum sentence date of December 24, 2023. (C.R. at 13, 14.)

On June 29, 2017, the Board reparoled Petitioner to a state detainer sentence.[2] (Department of Corrections (DOC) Institutional No. NA2627). (C.R. at 20, 22.) On February 25, 2020, the Board released Petitioner on parole with the condition that he "remain on parole until December 24, 2023[, the] longest remaining maximum for indictment numbers associated with [I]nstitutional [N]umber JR9641." (C.R. at 34.) Upon being paroled, Petitioner entered Harrisburg CCC as part of his parole home plan. (C.R. at 35-39.) On November 2, 2020, Petitioner reached his maximum sentence date at Institutional Number NA2627. However, Petitioner was also serving a sentence at Institutional Number JR9641 and a special probation sentence for his Berks County convictions. (C.R. at 55.) On January 24, 2022, following a DUI arrest, which Petitioner acknowledged, the Board ordered him, as a condition of parole, to enter in-patient drug and alcohol

---

[1] "'Backtime' is the portion of a judicially imposed sentence that a parole violator must serve as a consequence of violating parole before he is eligible for reparole." *Palmer v. Pennsylvania Board of Probation and Parole*, 134 A.3d 160, 162 n.1 (Pa. Cmwlth. 2016).

[2] The state detainer sentence was the one-year and nine-month to three year and six-month sentence that he served under inmate number NA2627 for his conviction for fleeing or attempting to elude an officer. (C.R. at 26.)

programming at Conewago Drug Rehabilitation. (C.R. at 43, 91.) Petitioner successfully completed his treatment at Conewago on February 24, 2022. (C.R. at 55.) On October 25, 2022, following a new indictment in Dauphin County for retail theft, the Board issued a decision to continue Petitioner on parole. (C.R. at 44.)

On March 5, 2023, parole staff conducted an annual progress report and discovered that Petitioner had two active felony warrants under a different spelling of his name which he failed to report, in violation of his parole conditions. On March 6, 2023, parole staff attempted to contact Petitioner at his approved residence but were unsuccessful. Staff then issued Petitioner a written instruction to report to the Harrisburg District Office the next day, March 7, 2023, at 9:00 a.m. (C.R. at 56.) Petitioner failed to report to the office as instructed. On March 8, 2023, the Board declared Petitioner delinquent effective March 7, 2023, for leaving his approved residence. (C.R. at 45.) On March 10, 2023, DOC issued a warrant to detain Petitioner. (C.R. at 46.) On the same day, Petitioner turned himself in. At this point, Petitioner fell and was taken by ambulance to the hospital for medical treatment where he stayed until cleared to leave. (C.R. at 56.) Also on March 10, 2023, Petitioner was given secured bail in Dauphin County, which he did not post. (C.R. at 56, 59.) On March 21, 2023, the Board issued a decision to detain Petitioner pending multiple arrests in both Dauphin and York Counties. (C.R. at 47.)

On April 27, 2023, Petitioner voluntarily waived his parole revocation hearing. (C.R. at 50-51.) On May 17, 2023, a revocation hearing report was executed accepting Petitioner's waiver and his admission of new criminal convictions. (C.R. at 67.) The Hearing Examiner recommended that Petitioner be given only partial credit for the time he spent at liberty on parole due to "the inmate's terrible supervision history over the course of 6 DOC #s." The Hearing Examiner's

3

report also stated that "[h]e incurred a prior DUI conviction during his release period and was continued on parole after treatment. He later absconded and incurred the arrest that led to the current direct violation." (C.R. at 71.) In a decision issued on May 18, 2023 (mailed on May 22, 2023), the Board recommitted Petitioner as a CPV to a term of 12 months, when available, pending his return to an SCI. (C.R. at 80.) The Board did not calculate a parole violation maximum date for Petitioner at this time because the date was dependent upon Petitioner's return to an SCI from his county sentences.

Meanwhile, on March 10, 2023, DOC issued a warrant for Petitioner following criminal charges arising out of York County. (C.R. at 82.) On March 16, 2023, bail was set for Petitioner's York County charges, but Petitioner did not post bail. (C.R. at 98.) On October 5, 2023, Petitioner waived his right to counsel and to a parole revocation hearing. (C.R. at 86.) On October 11, 2023, Petitioner's waiver was accepted and a revocation hearing report was executed. (C.R. at 113.)

On October 12, 2023, the Board issued a decision (mailed on October 19, 2023), that Petitioner should be recommitted as a CPV to serve 12 months concurrently with his prior CPV 12-month recommitment period and established a parole violation date of June 17, 2027. (C.R. at 141-42.) This decision awarded Petitioner credit from June 29, 2017 (the date Petitioner was constructively paroled to his new state sentence), to February 25, 2020 (the date Petitioner was paroled and released from an SCI), or 971 days. The Board also awarded six days' backtime credit from March 10, 2023 (the date of DOC's warrant), to March 16, 2023 (the date secure bail was set on the new charges). (C.R. at 139.) Subtracting 977 days from the 2,369 days Petitioner owed at the time of his most recent release on parole yielded 1,392 days Petitioner owed on his original sentence. (C.R. at 139.) Adding

4

1,392 days to August 25, 2023 (the date of Petitioner's conviction at York County docket CR-1974-2023) yielded a parole violation maximum date of June 17, 2027. (C.R. at 139.)

On November 6, 2023, Petitioner filed *pro se* a timely Administrative Remedies Form with the Board. (C.R. at 143-68.) In his request for administrative relief, Petitioner claimed that the Board's decision failed to credit him with time at liberty on parole for the time that he was housed in the CCC in Harrisburg and also for the time he was at Conewago Drug Rehabilitation. In addition, he maintained that he "does not meet any of the standards pursuant to 61 Pa.C.S.[] § 6138(a)." (C.R. at 143.) He also claimed that the Board's calculation of his street time was wrong and that his new maximum date of June 17, 2027, cannot be correct. *Id.* In addition, he claimed that the Board's decision gave false reasons for taking his street time because he did not abscond while on parole supervision. *Id.*

On April 10, 2024, the Board responded to Petitioner's Administrative Review Form, affirming its October 12, 2023 decision. (C.R. at 169, 170, 171, 172.) On July 23, 2024, Petitioner, through counsel, filed a petition for review *nunc pro tunc* in this Court's appellate jurisdiction. On February 13, 2025, this Court found Petitioner's counsel to be ineffective and reassigned the matter to the Centre County Public Defender's Office.[3] On March 12, 2025, Petitioner filed a counseled ancillary petition for review. On August 29, 2025, Petitioner filed a brief in support of his ancillary petition for review.

---

[3] *See Shivers v. Pennsylvania Parole Board* (Pa. Cmwlth., No. 969 C.D. 2024, filed February 13, 2025) (unreported).

5

## II. **Discussion**[4]

### A. **Issues and Arguments of the Parties**

Petitioner argues that the Board abused its discretion and erred in recalculating his maximum date in its decision mailed on October 19, 2023. He argues that the Board made two errors in its decision. First, he maintains that the Board is required to articulate brief reasons when it chooses to deny a non-violent CPV credit for the time he was at liberty on parole. Petitioner contends that the Board's statement that Petitioner was being denied credit because he absconded and was delinquent on parole is not supported by record evidence. (Petitioner's Br. at 14.) In response, the Board asserts that the challenged Board decision satisfied the requirements set forth *Pittman v. Pennsylvania Board of Probation and Parole*, 159 A.3d 466 (Pa. 2017), when it set forth multiple reasons for its decision to award Petitioner partial credit for his time spent at liberty on parole. Respondent also asserts that the reasons provided by the Board are supported by the record. (Respondent's Br. at 11-12.)

Petitioner's second claim of error is that the Board abused its discretion by not granting him credit for time spent at liberty on parole while he participated in an inpatient treatment program at the Conewago Drug Rehab. He argues that a CPV who claims that the conditions of a residential placement were so restrictive as to indicate that he was not "at liberty on parole" while in attendance has a right to an evidentiary hearing to prove his claim under *Cox v. Board of Probation and Parole*, 493 A.2d 680 (Pa. 1985). *Id.* He then asserts that while recent legislation has removed the right to a hearing when the residential placement is in a community

---

[4] Our review is limited to determining whether the Board erred as a matter of law, made findings unsupported by substantial evidence in the record, or violated Petitioner's constitutional rights. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Fisher v. Pennsylvania Board of Probation and Parole*, 62 A.3d 1073, 1075 n.1 (Pa. Cmwlth. 2013).

correction facility (CCF) or CCC, it did not remove the right to an evidentiary hearing for parolees at inpatient drug rehabilitation centers. *Id.*

The Board argues in response that Petitioner's argument with respect to the lack of credit for time spent at liberty on parole contravenes the plain language of 61 Pa.C.S. § 6138(a)(2.3), which expressly denies entitlement to credit for periods spent at a CCC or inpatient treatment, and, therefore, this statutory language eliminates Petitioner's entitlement to an evidentiary hearing. (Respondent's Br. at 8.)

## B. Whether the Board Abused Its Discretion When It Denied Petitioner Time Credit for Reasons Not Supported by the Record

The Board's decision (mailed on October 19, 2023), recommitting Petitioner as a CPV provided reasons for its decision to award him partial credit for time spent at liberty on parole:

> In this case, the Board articulated that you were only awarded partial credit because you absconded while on supervision, you have a history of supervision failures, you continued to demonstrate unresolved drug and/or alcohol issues, and you incurred three direct violations during this release period. The record reveals that you were declared an absconder by Board decision recorded March 8, 2023[,] with an effective date of delinquency of March 7, 2023. In regard[] to your past supervision failures, the record reflects five prior CVP recommitments and one [Technical Parole Violation] [(]TPV[)] recommitment. Also the supervision history notes alcohol use resulting in a DUI conviction and placement in an inpatient drug and alcohol facility. Finally, the record reflects three convictions during your most recent paroling period. Considering the aforementioned facts, the panel finds the reasons for denying you credit for time spent at liberty on parole are sufficient.

(C.R. at 169.)

Petitioner claims that the Board's award of only partial credit was based in part on the erroneous conclusion that Petitioner was delinquent. (Petitioner's Br. at 17.) Petitioner acknowledges that his parole agent visited his home and was unable to find him and that Petitioner did not report to his agent's office the next morning as he was directed to do by a note the agent left at his home address. However, he states that "[t]here was no evidence presented that [Petitioner] saw the note or was otherwise aware of his obligation to report to the office at the time prescribed." *Id.* Petitioner then argues that the Board's warrant was not issued until three days later on March 10, 2023, and did not put him on notice that he was delinquent on March 7, 2023. He further maintains that "[w]hile there is an administrative action dated March 8, 2023, declaring him delinquent on March 7th in the certified record, there is nothing in the record establishing that he was given notice of the administrative action nor was this document among the documents admitted into the record of the revocation hearing by the hearing examiner." *Id.* at 18.

In the present case, Petitioner waived his right to a revocation hearing. (C.R. at 67.) However, the Revocation Hearing Report contains the Hearing Examiner's Recommendation for Awarding/Denying Credit. The Hearing Examiner recommended awarding Petitioner partial credit for the following reasons: (1) the offender absconded while on parole supervision; (2) the offender has a history of supervision failures on probation and/or parole; and (3) the offender continues to demonstrate unresolved drug and/or alcohol issues that warrant denying credit for time at liberty on parole. (C.R. at 71.)

We find that the Board provided sufficient reasons for its decision to deny Petitioner partial credit for his time spent at liberty on parole to satisfy the *Pittman* standard. As this Court has clarified, the explanation required by *Pittman* need not be extensive and may consist of a single sentence. *Soto v. Pennsylvania*

8

*Parole Board*, 311 A.3d 1260 (Pa. Cmwlth. 2024). We also note that even if the Board had not listed Petitioner's status as an absconder as a reason for granting Petitioner only partial credit for his time at liberty on parole, the other reasons given for its decision are sufficient to meet the requirements of *Pittman*.

Moreover, in this case we have only Petitioner's bald assertion that he did not abscond while under supervision, while the evidence of record contains information supporting the Board's assertion that Petitioner was guilty of absconding while on parole. This record evidence includes the fact that parole staff was unable to contact Petitioner at his approved residence and that he did not report to the Harrisburg District Office the next day after being left a written instruction to do so. (C.R. at 56.) Additional record evidence includes a Board action dated March 8, 2023, declaring him delinquent on March 7, 2023. (C.R. at 45.)

In sum, there is ample evidence in the present case that the Board considered Petitioner's individual supervision history and reasonably relied upon that history to articulate a number of specific factors supporting its discretionary decision to deny Petitioner partial credit for the time he spent at liberty on parole. We find no reason to disturb the Board's decision in this respect.

### C. Whether Petitioner is Entitled to Credit for Time Spent in Inpatient Treatment at Conewago

Petitioner argues on appeal that the Board lacked authority to deny him credit for time he spent at an inpatient drug and alcohol facility as a condition of his parole. He maintains that under *Cox*, 493 A.2d 680, "a CPV claiming that the conditions of a residential placement were restrictive beyond liberty on parole has the right to an evidentiary hearing to prove his claim." (Petitioner's Br. at 14.) He notes that "[w]hile recent legislation has removed the right to a hearing when residential placement is in [CCFs], it did not restrict such claims at inpatient drug rehabilitation centers." *Id.*

9

In the Board's decision (mailed on April 10, 2024) in response to Petitioner's Administrative Remedies Form, the Board addressed this argument as follows:

> Finally, to address your request for credit for time spent in . . . Conewago Place Drug/Alcohol Inpatient Facility. Effective June 30, 2021, the Prisons and Parole Code[, 61 Pa.C.S. §§ 101-7301,] provides in relevant part that "[a] parolee is at liberty on parole when the parolee is residing at a [CCC, CCF] or group-based home for purposes of this section. This paragraph does not apply to parolees detained on the [B]oard's warrant or recommitted as a technical parole violator to a [CCC] or [CCF]." 61 Pa.C.S. § 6138(a)(2.3). The record reveals that . . . [i]n February 2022, you were at the Conewago Place Drug/Alcohol Inpatient Facility. In [] [this] instance[], you were not there for technical parole violations, and neither the Board, nor the Department of Corrections had a warrant lodged against you. Thus, you are not entitled to any credit for the time in question, pursuant to the statute.

(C.R. at 171.)

In June of 2021, Section 6138(a) of the Prisons and Parole Code was amended so that it now provides, in pertinent part:

> (2) If the offender's parole is revoked, the offender shall be recommitted to serve the remainder of the term which the offender would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time spent at liberty on parole.
>
> (2.1) **The [B]oard may, in its discretion, award credit to an offender recommitted under paragraph (2) for the time spent at liberty on parole,** unless any of the following apply;
>
> > (i) The crime committed during the period of parole or while delinquent on parole is a crime of violence

10

or a crime listed under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders).

(ii) The offender was recommitted under section 6143 (relating to early parole of offenders subject to Federal removal order).

(2.2) Credit awarded under paragraph (2.1) is subject to forfeiture under this section if an offender is subsequently recommitted as a [CPV].

(2.3) **A parolee is at liberty on parole when the parolee is residing at a** [CCC, CCF] **or group-based home for purposes of this section.** This paragraph does not apply to parolees detained on the [B]oard's warrant or recommitted as a technical parole violator to a [CCC] or [CCF].

61 Pa.C.S. § 6138(a) (emphasis added).

In *El-Amin v. Pennsylvania Parole Board*, this Court stated:

By enacting Section 6138(a)(2.3) of the Parole Code, the General Assembly did not change the law. Rather, the General Assembly codified the long line of precedents which held that, because parolees residing in a CCC or CCF generally are allowed to leave with permission for various reasons, including employment, employment searches, leisure activities, shopping, and attending medical and Social Security appointments, the CCCs and CCFs do not restrict a parolee's ability to leave; the staff at CCCs and CFCs are generally prohibited from stopping any resident from leaving the building, even if he/she chooses to leave without signing out; and, although the doors at CCCs and CFCs are locked from the outside to prohibit unauthorized people from entering the building, parolees can freely exist the buildings; therefore, time spent by a parolee at a CCC or CCF is generally treated as time spent at liberty on parole. *See Medina* [*v.*

*Pennsylvania Board of Probation and Parole*], 120 A.3d [1116,] 1119 (Pa. Cmwlth. 2015)] **("[T]his Court repeatedly holds that parolees are not entitled to credit for periods in which they reside in . . . CCCs, CCFs, or inpatient treatment programs where the Board determines the parolees did not meet their burden of proving the restrictions on their liberty were the equivalent of incarceration.").** The fact that the General Assembly codified this Court's common law in this area undermines El-Amin's argument for revisiting those holdings.

273 A.3d 1255, 1260 (Pa. Cmwlth. 2022) (emphasis added).

The Board maintains that in Petitioner's case, he "did not have a history of drug or alcohol abuse and his parole supervision [(sic)] wished to give him the opportunity for an inpatient treatment following his DUI arrest instead of detaining and recommitting him as a parole violator." (Respondent's Br. at 10-11.) The Board further argues that "[i]n the present case, it is uncontested that there was no parole warrant in place while Petitioner was at . . . the Conewago inpatient facility." *Id.* at 11. In addition, we note that the Board stated in Petitioner's Special Conditions of Parole that "ANY discharge or termination other than successful completion[] will constitute a violation of the conditions of your parole," (C.R. at 43), and that Petitioner was employed as a janitor while attending Conewago Drug Rehab. (C.R. at 55.)

We note that Section 5001 of the Prisons and Parole Code defines a "community corrections center" as "[a] residential program that is supervised and operated by [(DOC)] in accordance with this chapter." 61 Pa.C.S. § 5001. A "community corrections facility," on the other hand, is defined as "[a] residential facility operated by a private contractor that: (1) houses offenders pursuant to a contract with [DOC]; and (2) is operated in accordance with this chapter." *Id.* Section 5003 of the statute provides that the offenders who may be housed in

12

community corrections centers and community corrections facilities include: "(b)(1) An offender who is serving the community-based portion of a sentence in a State drug treatment program." 61 Pa.C.S. § 5003.

In *Torres v. Pennsylvania Board of Probation and Parole*, 861 A.2d 394 (Pa. Cmwlth. 2004), this Court stated that "Conewago is a privately owned and operated facility, which conducts inpatient drug and alcohol treatment programs under contract with the Board and with the [DOC]." *Torres*, 861 A.2d at 395. We also stated that "Conewago's inpatient programs serve parolees under the supervision of the Board . . . ." *Id.* Therefore, it appears that Conewago qualifies as either a CCC or CCF under the statute. Moreover, in *Christman v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 1139 C.D. 2018, filed June 28, 2019) (unreported),[5] Conewago is described as a community corrections center or CCC. Slip op. at 1. Under DOC's administrative regulations, a "community corrections center" is a "minimum-security community-oriented facility operated or contracted by [DOC] for the purpose of facilitating special programs." 37 Pa. Code § 91.1. We therefore find that the Board did not abuse its discretion when it denied Petitioner credit for time spent at liberty on parole while participating in a drug and/or alcohol treatment program at Conewago Drug Rehab.[6]

---

[5] Under section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code § 69.414(a).

[6] We note that even if *Cox* were to apply in this case, Petitioner would have a heavy burden of proof to establish that his inpatient treatment program was the equivalent of prison conditions. In *Cox*, the Supreme Court determined that: (1) because the parolee agreed to attend the inpatient treatment program as a condition of parole, as Petitioner did in this case, his attendance there was presumed to be "at liberty on parole"; (2) it was, therefore, the parolee's burden to develop a factual record and persuade the Board that "the program presented an environment so restrictive that he should get credit for the time spent in it[,]" *i.e.*, that the specific characteristics of the program constituted restrictions on his liberty that were equivalent to incarceration; and (3) a reviewing **(Footnote continued on next page…)**

13

### III. Conclusion

For the above-stated reasons, we affirm the April 10, 2024 decision of the Board.

_____
PATRICIA A. McCULLOUGH, Judge

---

court should not interfere with the Board's determination of that issue unless the Board acted "arbitrarily" or "plainly abuse[d] its discretion." *Cox*, 493 A.2d at 681, 683.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Shivers, :
    Petitioner :
      :
   v. : No. 969 C.D. 2024
      :
Pennsylvania Parole Board, :
    Respondent :

## _ORDER_

   AND NOW, this 20th day of January, 2026, the Pennsylvania Parole Board's April 10, 2024 decision is AFFIRMED.

            _____
            PATRICIA A. McCULLOUGH, Judge