IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Samuel Parker,                               :
                          Petitioner         :
                                             :      No. 726 C.D. 2021
                 v.                          :
                                             :      Submitted: January 21, 2022
Pennsylvania Parole Board,                   :
                          Respondent         :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE LORI A. DUMAS, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: June 14, 2022


Samuel Parker (Parker) petitions for review of the Pennsylvania Parole Board's (Board) May 12, 2021 order, which affirmed its January 24, 2020 decision that denied Parker credit on his original sentence for the time he spent at liberty on parole at Renewal, Inc. (Renewal), and in the Allegheny County Jail (county prison) prior to trial and sentencing on new criminal charges. Parker's appointed counsel, Meghann E. Mikluscak, Esquire (Counsel), First Assistant Public Defender for Fayette County, has filed an application for leave to withdraw her appearance as Parker's counsel and a letter asserting that Parker's appeal lacks merit. For the following reasons, we grant Counsel's application and affirm the Board's order.

In 1996, Parker was convicted of aggravated assault, and the Court of Common Pleas of Allegheny County (trial court) sentenced him to serve 10 to 20 years

in a state correctional institution (SCI).[1]  (Certified Record (C.R.) at 1.)[2]  Beginning in 2006, Parker was released on parole several times without success.  (C.R. at 4-50.)  This case concerns Parker's reparole on July 5, 2016, and the time he spent thereafter at Renewal and in the county prison.[3]  (C.R. at 51-52.)  Parker was reparoled to Renewal and remained there until June 2, 2017, when he was released to an approved home plan.  (C.R. at 52, 61, 156.)  Parker remained on parole until April 12, 2018, when he was arrested by the Allegheny County Police and incarcerated in the county prison on charges of indecent assault of a child, endangering the welfare of children, and corruption of minors.[4]  (C.R. at 66-67.)  Bail was set at $300,000 and not posted. (C.R. at 66, 69.)

On September 24, 2018, Parker pleaded guilty to the charge of corruption of minors, and the remaining charges were withdrawn.  (C.R. at 70-71, 160.)  He was sentenced to 9 to 18 months in the county prison, followed by 5 years of probation. (C.R. at 160.)  Additionally, he was required to register as a sex offender for 15 years. (*Id.*)  Parker received 164 days' credit for time served for the period of April 14, 2018, through September 24, 2018.  (*Id.*)  As a result of the new criminal conviction, the Board scheduled a revocation hearing.  Parker waived his right to panel and revocation hearings and his right to counsel, and he admitted to the new criminal conviction.  (C.R. at 92-93.)  By decision mailed on December 12, 2018, the Board recommitted Parker as a convicted parole violator (CPV) to serve 24 months' backtime in an SCI, when available, pending his parole from or completion of his Allegheny County sentence and his return to an SCI.  (C.R. at 118-19, 166-67.)  Parker sent the Board correspondence

---

[1] His original maximum sentence date was May 17, 2015.  (Certified Record (C.R.) at 2.)

[2] Additionally, in 1997, Parker pleaded guilty to the federal charge of corrupt organizations and received a sentence of 14 years and 3 months.  (C.R. at 1.)

[3] At this time, his maximum sentence date was November 6, 2020.  (C.R. at 51.)

[4] The Board lodged its detainer warrant the same day.  (C.R. at 57.)

on January 9, 2019, requesting that the Board credit him with the time he was detained on the Board's warrant while awaiting trial beginning on April 14, 2018, and that the Board give him "a lighter term." (C.R. at 126-27.) By decision mailed on February 6, 2019, the Board recalculated Parker's maximum sentence date as November 2, 2024, based on his return to state custody on January 14, 2019. (C.R. at 122, 124-25.)[5]

Parker, *pro se*, appealed the Board's recalculation of his maximum sentence date, claiming that he should have received credit for the 3 years, 11 months, and 27 days he was on parole. (C.R. at 128-29.) He further claimed that his new conviction was not for a disqualifying crime under section 6138(a)(2.1) of the Prisons and Parole Code (Parole Code), 61 Pa. C.S. § 6138(a)(2.1), and that the Board failed to provide a reason for denying him credit. By order mailed on July 1, 2019, the Board characterized Parker's appeal as involving both its December 12, 2018 and February 6, 2019 decisions. (C.R. at 132-33.) As to the December 12, 2018 decision, the Board explained that Parker was sentenced to 24 months' backtime, when available, because he was not yet available to commence service of his original sentence at the time the Board issued its decision.[6] As a result, when the Board learned of Parker's availability date, it mailed its February 6, 2019 decision, which reflected his new maximum sentence date and the Board's credit allocation. The Board further explained that it recommitted Parker for 24 months due to his new Allegheny County conviction, and

---

[5] Neither decision addresses the Board's reason for denying street time credit. However, the November 4, 2018 revocation hearing report states that credit was denied because the new criminal "[c]onviction was sexual in nature." (C.R. at 96.)

[6] In its decision, the Board stated that Parker was unavailable to begin serving his backtime because he had not yet been sentenced on new Philadelphia County charges. However, it appears the Board was mistaken, as no Philadelphia County charges appear in the record in this matter. Moreover, Parker was unavailable because he was required to serve his new Allegheny County sentence prior to serving the balance of his original sentence. *See* section 6138(a)(5)(iii) of the Parole Code, 61 Pa. C.S. § 6138(a)(5)(iii).

that the presumptive backtime range for such offense is 18 to 24 months under the Board's regulations; thus, because the recommitment term fell within that range, it is not subject to challenge.

The Board next advised Parker that while the decision to grant or deny credit for time spent at liberty on parole is purely a matter of discretion, the Board had no discretion to award Parker credit for the time he spent at liberty on parole in this case because he was convicted of a crime requiring sex offender registration. (C.R. at 133 (citing section 6138(a)(2.1)(i) of the Parole Code, 61 Pa. C.S. § 6138(a)(2.1)(i)).) Finally, the Board explained that it delivered a decision to Parker on June 4, 2019, in which it modified the recalculation of his maximum sentence date from November 2, 2024, to May 17, 2023, and advised that Parker could appeal that decision if he did not agree with the recalculated maximum sentence date.[7] (C.R. at 133, 137.) As such, the Board affirmed its December 12, 2018 decision and reversed its February 6, 2019 decision as to the maximum sentence date.

On July 1, 2019, Parker challenged the Board's decision recalculating his maximum sentence date to May 17, 2023. (C.R. at 138-40.) He again sought credit from the time he spent at Renewal and in the county prison. In response, on October 7, 2019, the Board advised that an evidentiary hearing would be scheduled to determine whether Parker was entitled to credit for the time he spent at Renewal from July 5, 2016, to June 2, 2017, and for the time he spent in the county prison from April 13, 2018, to January 14, 2019. (C.R. at 156.)

---

[7] The Board advised that Parker's maximum sentence date was recalculated based on this Court's decision in *Penjuke v. Pennsylvania Board of Probation and Parole*, 203 A.3d 401, 420 (Pa. Cmwlth. 2019) (holding that "the Board lacks the statutory authority to revoke street time credit previously granted to a parolee as a [technical parole violator] when it subsequently recommits the parolee as a CPV").

4

The hearing took place as scheduled on November 14, 2019. (C.R. at 214.) Parker waived his right to representation by counsel at the hearing. (C.R. at 158, 173.) Parker testified first as to the time he spent in the county jail, stating that he did not post bond on the new criminal charges "[a]nd the reason why [he] didn't make bond was [be]cause [he] had to be detained anyways, so what good would it have been to make bond if [he] still had the detainer put on [him]. So [he] just figured [his] time should run together . . . ." (Notes of Testimony (N.T.) at 7; C.R. at 220.) Parker admitted that he received credit on his county sentence for all the time he spent in county prison. (N.T. at 9; C.R. at 222.)

Parole Agent (Agent) Phillip Peters introduced the trial court's September 24, 2018 sentencing order into evidence, showing that Parker received 164 days of presentence credit toward his county sentence, *i.e.*, the time he spent in the county prison from April 14, 2018, through September 24, 2018. (N.T. at 9-10; C.R. at 222-23; *see also* C.R. at 160.) Agent Peters also provided documentation showing that Parker was paroled from his county sentence on January 14, 2019. (N.T. at 10-11; C.R. at 223-24.) Agent Peters then explained that the two documents established that Parker was not available to the Board until January 14, 2019, and that any time before that date could not be credited to his original sentence. (N.T. at 11; C.R. at 224.)

As to his time spent at Renewal, Parker testified that Renewal is an extension of the Department of Corrections and that conditions there are similar to incarceration. Parker explained that he was permitted to leave the grounds to go to work, but when at Renewal, he had to abide by the same rules as in prison. For example, he had to attend drug and alcohol treatment programs, there were "mandatory counts and random urine samples, random searches, random shakedowns, [and the]

doors [are] locked at night." (N.T. at 12; C.R. at 225.) Further, he was required to leave the recreational area at 11:00 p.m., and report to his room. (*Id.*)

Parker claimed that a misconduct can result in a return to prison. If you escape, you can be picked up by the police or parole agents, and the sentence will be to return to prison. He claimed that at Renewal, you can only leave for work; otherwise, it "is a locked down facility[.]" (N.T. at 12; C.R. at 225.) As such, he claimed that his time there was the equivalent of incarceration.

Agent Peters called Darren Hood, a case management supervisor at Renewal, as a witness. (N.T. at 17; C.R. at 230.) Hood testified that if a parolee leaves the building, he is not escorted by staff, and that if a parolee leaves the work release program, he is not charged with escape; he is charged with absconding, which is a technical parole violation. Hood agreed that the building is locked, but that is to keep intruders out. There are doors and windows that open from the inside in case of emergency. Also, parolees can walk out the front door at any time. The staff has "no restraining authority whatsoever[,]" and does not carry guns, handcuffs, tasers, or pepper spray. (N.T. at 19; C.R. at 232.) Additionally, the building is not surrounded by a fence.

By decision mailed on January 24, 2020, the Board determined that Parker was not entitled to credit on his original sentence for the time he spent in the county prison, as the evidence established that Parker did not post bail on his new criminal charges and remained unavailable to the Board until he was paroled from his county sentence on January 14, 2019.[8] (C.R. at 242-44.) The Board also determined that

---

[8] The law regarding presentence credit is settled:

[I]f a defendant is being held in custody solely because of a detainer lodged by the Board and has otherwise met the requirements for bail on the new criminal charges,

**(Footnote continued on next page…)**

6

Parker was not entitled to a credit for the time he spent at Renewal. In so doing, the Board accepted the testimony of Hood over that of Parker and concluded that the restrictions imposed at Renewal did not constitute restrictions on Parker's liberty sufficient to warrant credit toward his original sentence. As such, Parker's maximum sentence date remained May 17, 2023.

Parker, *pro se*, filed an administrative appeal and a motion for reconsideration with the Board. (C.R. at 245-47.) Therein, Parker no longer claimed that Renewal was the equivalent of incarceration. He agreed that the doors in the building opened from the inside in case of emergency, that parolees can leave without authorization, that staff is not authorized to restrain parolees, that there is no fence around the building, and that Renewal is not affiliated with the Department of Corrections. (C.R. at 246.) Instead, Parker argued that since he complied with the rules at Renewal, completed all classes and programs, and was not an absconder, the Board should reconsider its decision and grant him credit for the time he spent at liberty on parole at Renewal.[9]

By decision mailed on May 12, 2021, the Board responded to Parker's administrative appeal and correspondence seeking reconsideration. (C.R. at 261-62.) The Board determined that sufficient evidence was presented at the evidentiary hearing to deny Parker credit for the time he spent in the county prison, because he was not

___

the time which he spent in custody shall be credited against his new sentence. *If a defendant, however, remains incarcerated prior to trial because he has failed to satisfy bail requirements on the new criminal charges, then the time spent in custody shall be credited to his new sentence.*

*Gaito v. Pennsylvania Board of Probation and Parole*, 412 A.2d 568, 571 (Pa. 1980) (emphasis added; footnote omitted). Parker concedes that he did not post bail on the new charges. Thus, all the time he spent in the county prison was properly credited to his new county sentence.

[9] Parker did not challenge the Board's denial of credit for the time he spent in the county prison.

held solely on the Board's warrant during that period, and at Renewal, because he failed to establish that Renewal was akin to incarceration. (C.R. at 261.) The Board therefore determined that it acted within its authority in denying Parker credit for the challenged periods and affirmed its January 24, 2020 decision.

On June 4, 2021, Parker filed a *pro se* letter in this Court. He thereafter filed a *pro se* petition for review seeking credit only for the period he spent at Renewal from July 5, 2016, to June 2, 2017, and again claiming that Renewal had a restrictive environment similar to prison. Petition for Review filed 6/23/2021, at 1-2. Additionally, he claims that the Board erred by revoking the time he spent at liberty on parole at Renewal because the offense he committed while on parole was not one of the disqualifying offenses listed under section 6138(a)(2.1)(i)-(ii) of the Parole Code, 61 Pa. C.S. § 6138(a)(2.1)(i)-(ii). Petition for Review filed 6/23/2021, at 2. Parker also claims that the Board abused its discretion by acting outside of its authority in denying him credit for the challenged period. Petition for Review filed 6/23/2021, at 2-3. On July 9, 2021, this Court ordered the Public Defender of Fayette County to represent Parker, and, on August 11, 2021, Counsel entered her appearance.

Counsel has filed an application for leave to withdraw appearance and a no-merit letter, asserting that Parker's appeal lacks merit. In *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), our Supreme Court set forth the technical requirements appointed counsel must meet in order to withdraw from representation of a parolee. This Court has summarized the requirements as follows:

> [C]ounsel seeking to withdraw from representation of a petitioner seeking review of a determination of the Board must provide a "no-merit" letter[,] which details "the nature and extent of [the attorney's] review and list[s] each issue the petitioner wished to have raised, with counsel's explanation of why those issues are meritless."

8

*Zerby v. Shanon*, 964 A.2d 956, 961 (Pa. Cmwlth. 2009). Counsel must also send the parolee a copy of the "no-merit" letter that satisfies the *Turner* requirements, furnish him with a copy of counsel's motion to withdraw, and inform the parolee of his right to retain new counsel or submit a brief on his own behalf. *Reavis v. Pennsylvania Board of Probation and Parole*, 909 A.2d 28, 33 (Pa. Cmwlth. 2006). If counsel fails to satisfy the foregoing requirements, we will not reach the merits of the underlying claims but will merely deny counsel's request to withdraw. *Zerby*, 964 A.2d at 960.

The record reflects that Counsel informed Parker of her request to withdraw; provided Parker with a copy of the no-merit letter that details Counsel's review of the issues raised by Parker and the reasons why Counsel concluded those issues are meritless; and advised Parker of his right to retain new counsel or raise any new points he might deem worthy of consideration. In response, Parker filed a brief on his own behalf. Because Counsel has satisfied the procedural requirements for withdrawal, the Court will independently review the merits of Parker's claims on appeal.

We begin with Parker's claim that he is entitled to credit on his original sentence for the time he spent at Renewal because it was sufficiently restrictive to equal incarceration. The law is well settled that a parolee may be entitled to credit for time spent in a residential facility if he demonstrates that the residential facility's characteristics are equivalent to incarceration. *Cox v. Board of Probation and Parole*, 493 A.2d 680 (Pa. 1985). Parolees bear the "burden of proving the restrictions on their liberty were the equivalent of incarceration." *Id.* at 683. The most important factors in determining whether a program is sufficiently restrictive to be equivalent to incarceration are: (1) whether the resident is locked in; and (2) whether the resident may leave without being physically restrained. *Medina v. Pennsylvania Board of*

9

*Probation and Parole*, 120 A.3d 1116, 1120-21 (Pa. Cmwlth.), *appeal denied*, 130 A.3d 1293 (Pa. 2015) (quotation & citations omitted). We have consistently held that where the Board determines that parolees failed to meet their burden of proving that the restrictions on their liberty were the equivalent of incarceration, they are not entitled to credit for periods in which they resided in community corrections centers/facilities or inpatient treatment programs. *Id.* at 1119. "[W]e will not interfere with the Board's determination . . . unless it acts arbitrarily or plainly abuses its discretion." *Cox*, 493 A.2d at 683.

Counsel contends in her no-merit letter that this issue is meritless because Parker did not establish that Renewal was sufficiently restrictive to be considered the equivalent of incarceration. Moreover, she points out that Parker agreed, in his motion for reconsideration to the Board, that the facts established at the evidentiary hearing showed that the time he spent at Renewal was not the equivalent of incarceration. In point, Renewal's staff was unarmed and had no authority to prevent parolees from leaving, the parolees were not locked up, and the building was not fenced. Thus, according to Counsel, Parker is not entitled to credit for the period he resided at Renewal. We agree.

In this case, the Board determined that Parker failed to meet his burden of proving that the restrictions on his liberty were the equivalent of incarceration. In so determining, the Board credited Hood's testimony that when a parolee leaves the building for work release, he is not escorted by staff, and if a parolee walks away from the work release program, he is not charged with escape, but rather, he is charged with the technical parole violation of absconding. Further, the Board found that there are doors and windows in the building that open from the inside in case of emergency, Parker could walk out the front door at any time because the staff has no authority to

10

restrain parolees or otherwise prevent them from leaving the facility, and there is no fence around the facility. Parker also admitted in his motion for reconsideration that Renewal's doors are locked to keep intruders out, that he could exit the building at any time, that Renewal's staff was unarmed and had no authority to prevent parolees from leaving the facility, and that there was no fence around the facility. (C.R. at 246.) These findings support the Board's determination that Parker is not entitled to credit under *Cox* for the period he resided at Renewal because the conditions there were not sufficiently restrictive to be considered the equivalent of incarceration. Accordingly, we conclude that the Board did not act arbitrarily or plainly abuse its discretion when it denied Parker credit on his original sentence for the period he resided at Renewal. This issue is therefore without merit.

Second, we address Parker's claim that he is entitled to credit for the time he spent at liberty on parole at Renewal because his new criminal conviction was not a disqualifying offense under section 6138(a)(2.1) of the Parole Code. Section 6138(a)(2.1) of the Parole Code grants the Board discretion to award credit to a CPV for time spent at liberty on parole, with the following exceptions:

> (i) *The crime committed during the period of parole or while delinquent on parole is* a crime of violence as defined in 42 Pa.C.S. § 9714(g) (relating to sentences for second and subsequent offenses) or *a crime requiring registration under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders)*.

> (ii) The parolee was recommitted under section 6143 (relating to early parole of inmates subject to Federal removal order).

61 Pa. C.S. § 6138(a)(2.1) (emphasis added).[10]

---

[10] We note that various sections of the Parole Code, including section 6138, have recently been amended by the Act of June 30, 2021, P.L. 260, effective immediately. While the substance of **(Footnote continued on next page…)**

11

In her application to withdraw and no-merit letter, Counsel expresses confusion regarding Parker's new criminal conviction. She claims that Parker did not disclose his new criminal conviction in his petition for review. Counsel states that she conducted an online search of the Pennsylvania Unified Judicial System, but it failed to identify a new criminal conviction during the relevant time at issue. She also claims that the new criminal conviction is not included in the certified record and that documents in the record appear to be redacted to omit it. Thus, she could not find any support for Parker's claim that his new criminal conviction was not a disqualifying offense.

We note that, despite Counsel's claim, the certified record clearly establishes that Parker pleaded guilty to one felony count of corruption of minors pursuant to section 6301(a)(1)(ii) of the Crimes Code, 18 Pa. C.S. § 6301(a)(1)(ii), a crime that requires sex offender registration. (C.R. at 70.) Pursuant to 42 Pa. C.S. § 9799.14(b)(8), an offense under 18 Pa. C.S. § 6301(a)(1)(ii) is a "Tier I sexual offense." A Tier I sex offender must register with the Pennsylvania State Police for 15 years. 42 Pa. C.S. § 9799.15(a)(1). Moreover, the trial court instructed that the crime was a "TIER 1" sexual offense, requiring "15[-]year registration." (C.R. at 70, 160.) Thus, the Board had no discretion under section 6138(a)(2.1) of the Parole Code to award Parker credit for the time he spent at liberty on parole at Renewal, and his claim to the contrary is meritless.[11]

---

the pertinent statutory section both prior to and after the amendments is essentially the same, we nevertheless reference the version of the Parole Code that was in effect at the time the Board rendered its decision in this matter.

[11] Because we have already determined that the Board's findings support its determination that Parker is not entitled to credit under *Cox* for the period he resided at Renewal, and therefore, that it did not act arbitrarily or plainly abuse its discretion in denying Parker credit for that period, and for the additional reason that the Board had no discretion under section 6138(a)(2.1) of the Parole Code

**(Footnote continued on next page…)**

12

We turn now to Parker's brief to this Court. Therein, Parker does not claim that the time he spent at Renewal was equivalent to incarceration. Instead, he requests credit for the time he spent at liberty on parole at Renewal based on his 2013 recommitment as a technical parole violator (TPV) for driving under the influence (DUI). Parker's Brief at 6. He advises that DUI is not a disqualifying offense under section 6138(a)(2.1) of the Parole Code. Further, he points out that he was reparoled in 2011. Therefore, he claims, the Board was only authorized to revoke the time he spent at liberty on parole from 2011 to 2013.

At the outset, we note that Parker has raised this issue for the first time on appeal to this Court, and, as such, it is waived.[12] However, even if we were to reach the issue, it is meritless. First, as addressed above, the disqualifying crime under section 6138(a)(2.1) of the Parole Code is Parker's 2018 conviction for corruption of minors, not his 2013 DUI conviction. Second, Parker provides no explanation of why his 2013 DUI conviction[13] is relevant to the time he spent at Renewal following his reparole on July 5, 2016. Third, when the Board recalculated Parker's maximum sentence date to November 2, 2024, it did not revoke the time Parker spent at liberty on parole from 2011 to 2013. (C.R. at 122.) The Board did revoke two prior periods of parole occurring between 2014 and 2016. (*Id.*) However, the Board returned that time to Parker when it recalculated his maximum sentence date to May 17, 2023. (C.R. at 135, 137.) Thus, the Board's current recalculation of Parker's maximum sentence

_____

to award Parker credit for the time he spent at Renewal based on his disqualifying conviction, we need not address Parker's third issue.

[12] It is well settled that "issues not raised by a CPV before the [B]oard in an administrative appeal are waived for purposes of appellate review by this [C]ourt." *McCaskill v. Pennsylvania Board of Probation and Parole*, 631 A.2d 1092, 1094-95 (Pa. Cmwlth. 1993).

[13] By decisions mailed on March 5 and August 29, 2013, the Board recommitted Parker to serve six months' backtime as a TPV, along with a concurrent term of six months' backtime as a CPV for a DUI conviction. (C.R. at 21, 26-27.)

13

date only involves the period of time from July 5, 2016, through his return to the Board's custody on January 14, 2019, *i.e.*, no other periods of parole were part of the recalculation.[14] Parker's claim in this regard is also, therefore, meritless.

Accordingly, for the foregoing reasons, Counsel's application for leave to withdraw appearance is granted, and the Board's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

---

[14] Adding the 1,584 days that remained on Parker's sentence when he was paroled in 2016 to the date he returned to the Board's custody in 2019 equals his current recalculated maximum sentence date of May 17, 2023. (C.R. at 135.)

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Samuel Parker,               :
        Petitioner       :
                     :   No. 726 C.D. 2021
        v.              :
                     :
Pennsylvania Parole Board,    :
        Respondent    :

## *__ORDER__*

      AND NOW, this 14th day of June, 2022, the application for leave to withdraw appearance, filed by Meghann E. Mikluscak, Esquire is GRANTED, and the order of the Pennsylvania Parole Board, dated May 12, 2021, is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge